# Copeland, *et al. v.* Pope.

### Conversion and Trespass.

(Decided June 30, 1916. Rehearing granted December 30, 1916. 73 South. 490.)

1. **Landlord and Tenant; Lease; Termination; Grounds.**—The assertion by the landlord that the tenancy was terminated solely because the tenant was unable to get provisions and other things furnished on a credit to make a crop on the land, excluded any other reasons for the attempted termination.

2. **Same; Breach; Evidence.**—The evidence examined and held to show that the defendant breached the agreement to lease land for occupancy and use as a residence and a farm, to erect a house on the premises and to allow the tenant to cultivate certain lands to be cleared around the house without paying rent.

3. **Trover and Conversion; Recovery; Evidence.**—The evidence examined and held to show that the agent of the defendant wrongfully took and converted a wagon and harness belonging to the plaintiff, entitling the plaintiff to recover.

4. **Landlord and Tenant; Crops; Ownership.**—Where a witness testified that the corn in question was turned over by plaintiff to his firm in settlement of an indebtedness due from plaintiff to said firm it was a question for the jury as to whether the corn was the property of the firm, the action being for the conversion of the corn; and a charge that the firm had no right to take the corn and sell it to the defendant was an invasion of the province of the jury. On rehearing it is held that no proper exception was reserved to that portion of the charge.

5. **Charge of Court; Damages.**—Under the evidence in this case it was not error to refuse to defendant a charge asserting that no damage could be awarded for the taking of certain mules.

6. **Trial; Argument of Counsel.**—The rental contract was in evidence and it was not error to show or to comment upon the number of those constituting the family of the tenant.

APPEAL from the Birmingham City Court.

Heard before Hon. A. H. ALSTON.

Action by Bob Pope against Mary O. Copeland and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

The first two counts were for conversion of personal property.

Count 3 was for trespass to land. The fourth count declared for damages for the breach of a certain agreement entered into by and between defendants with plaintiff in November, 1912, by the terms of which defendant rented and leased to plaintiff a certain tract of land which is described, from January 1, to December 31, 1913, for occupancy and use only as a residence and farm, and not for any other purpose. The breaches alleged are: First, that defendants did oust plaintiff from the possession or enjoyment or use of said premises; second, unlawfully took or caused to be taken from the possession of plaintiff certain personal property therein described necessary to the proper cultivation, use, and enjoyment of the leased premises; third, practically same as second. Count 5, sets up an agreement as part of the contract of rental the erection on the premises of one three-room, boxed frame house for the use and occupation of plaintiff during time of said lease, and the breach of said agreement by a failure and refusal to erect said house. The sixth count sets up the agreement of lease, the agreement set out in the fifth count as to the erection of the house, and an additional agreement that plaintiff should have the right to cultivate not exceeding five

acres of land which he was to clear around the dwelling house, without consideration or payment of rent for same. The breaches alleged are the combined breaches alleged in counts 4 and 5 and certain additional breaches not necessary to be here set out.

R. H. FRIES and CABANISS & BOWIE, for appellants. ALLEN, BELL & SADLER, for appellee.

McCLELLAN, J.—The appellee brought this action against the appellants. The issues raised by the pleading were those tendered by the six counts of the complaint, a general traverse thereof, and such matters "which, if specially pleaded, would constitute a legal defense." The first and second counts, respectively, claim damages for the wrongful taking and for the conversion of a wagon, set of harness, two mules, and 200 bushels of corn. The third count declares for a trespass upon land and for the wrongful taking of the chattels above mentioned. The fourth, fifth, and sixth counts declare upon breaches of a contract for the rental and the improvement by the lessors of a certain tract of land; the plaintiff being constituted thereby the tenant of the defendants for the year 1913. Upon the conclusion of the evidence the court gave, at the request of the plaintiff, the following instruction: "If the jury believe the evidence, they will find a verdict in favor of the plaintiff." In the court's oral charge this special instruction was referred to, and the jury was advised that the court did not undertake by giving that special charge to say what amount of damages the jury should assess.

It was shown without dispute that, in respect of the matters here involved, the defendants were represented by W. B. Copeland as their agent; a rental contract covering lands owned by the defendants was entered into between the plaintiff and the defendants for the occupancy and use by the plaintiff of the lands described in the complaint; that plaintiff was put in possession under the contract, and proceeded with such preliminary preparations for raising crops on the land as may be done in this region up to February 18 or 19, 1913; and that authorized agent of defendants did on one of those days "fire" the plaintiff, taking possession of a wagon and harness, two mules, and about 150 bushels of corn. The agent testified that his sole reason for undertaking to terminate the plaintiff's relation of tenancy and his use of the lands rented to him was that plaintiff was not able

[Copeland, et al. v. Pope.]

to get "furnished" to make crops on the land. Common knowledge informs the court that the reason thus stated in the parlance of the section meant that the tenant, who had a wife and seven children in and of his family, was not able to get a retail dealer to sell or "furnish" him on credit the essential rations and materials whereupon to subsist his household or wherewith to enable him to prepare for, plant, cultivate and gather crops on the land.

(1) The assertion of this affirmatively avowed sole reason for the agent's acts excluded any other or others, if, indeed, any other reason for his action existed or was known.

(2, 3) The rental contract contained no provision whereupon to rest a breach thereof because of the failure or inability of the tenant to secure advances from other people to equip and to sustain him in the farming operations contemplated when he rented the land. It is manifest from the record that breaches of the rental contract alleged in counts 4 and 6 were proven beyond dispute. It further appeared without conflict that the agent of the defendants wrongfully, without semblance of legal excuse, took, appropriated, and converted a wagon and harness. The wagon and harness were sold by Drennen & Co. to plaintiff, that concern retaining the title thereto, though W. B. Copeland was also accepted as a surety to plaintiff as principal debtor. Neither the defendants nor W. B. Copeland possessed any right to take and convert the wagon and harness. It resulted from this state of the evidence that the plaintiff was due a recovery from the defendants for the wrongful appropriation of the wagon and harness. It must be conceded that the propriety and right of the defendants, through their authorized agent, to take the corn, was a jury question in view of the testimony of Mr. Dryer, given when he was recalled to the stand by the defendants. It must be further conceded that the testimony touching the inquiry whether or not the mules had been sold by W. B. Copeland to plaintiff required the submission of that issue to the jury for decision. It thus appears that the plaintiff was entitled to a verdict against the defendants on the grounds we have stated; the measure of his recovery not being defined or affected by the giving of the affirmative charge quoted before in this opinion. The court did not err in giving that instruction.

(4, 5) The court invaded the province of the jury in thus instructing the jury in the oral charge: "But the corn, whatever was left in Bob's crib, his portion of it, I charge you under the

evidence in this case they had no right to take that corn and to sell it to Mr. Copeland or to any one else; they would have had to enforce the lien properly to have gotten it."

Mr. Dryer testified that plaintiff turned the corn in question over to the firm of Thompson & Dryer (previous owners of the land) in settlement and satisfaction of plaintiff's indebtedness to Thompson & Dryer. It was for the jury to decide whether the corn in question was the property of the firm as the result of plaintiff's agreement and settlement with the firm made. The quoted extract from the oral charge would have been free from error if the indicated feature of Dryer's testimony had not been submitted to the jury.

(6) The eleventh assignment of error, assuming to quote an expression in the oral charge of the court, is not justified by the record in that the word "mules" does not appear in the part of the oral charge to which this assignment has reference. The court did not error in refusing to charge the jury, at defendants' request, that no damages for the taking by defendants of the two mules could be considered or awarded by the jury, for the reason that, if the jury accepted the plaintiff's theory of the purchase of the mules by the plaintiff, then there was a wrongful taking of the mules from the possession of the plaintiff, provided, that in taking the mules W. B. Copeland was acting for and on behalf of the defendants. Of course, if, as some of the evidence tended to show, the dealings between W. B. Copeland and the plaintiff were those of Copeland individually, and not as agent for the defendants, then the defendants could not be held responsible for the acts of Copeland in taking the mules, however wrongfully, from the plaintiff, provided, of course, he was but retaking, for himself alone, animals which he had not sold to the plaintiff.

(7) Under the counts charging a breach of the contract of rental, the rental contract being in evidence, it was not error to show or to comment upon the number of members constituting the plaintiff's family.

For the errors indicated, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

[Atkinson, et al. as Receivers, v. Dean.]

ON REHEARING.

McCLELLAN, J.—The reversal of the judgment is alone rested upon the error of the trial court in instructing the jury ex mero motu as quoted in the original opinion. For the first time in the brief for appellee in support of his application for rehearing the point is taken that the defendant's exception to the oral charge of the court was not separately reserved to the several portions thereof, with the result that the single, unseparated exception to the several portions of the oral charge could not avail for the reason that all of the excerpts included in the single exception were not erroneous. The argument originally made by the appellee against error in these excerpts did not take the objection stated. It is belated, but none the less well taken to the end that reversal of the judgment may be averted. There is no reversible error in the record.

The rehearing must therefore be granted. The judgment of reversal is set aside, and a judgment of affirmance will be entered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.